**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-1129

KEVIN RYDER,

      Plaintiff,

v.

CORRECTIONAL HEALTH PARTNERS, LLC,
CLIFFORD REZAK,
STACY ELIZARDO, and
CHRISTOPHER BUTALA,

      Defendants.

---

**COMPLAINT  AND  JURY  DEMAND**

---

      Plaintiff Kevin Ryder, through his attorneys Tyrone Glover, and Genevieve Mesch of TYRONE GLOVER LAW, respectfully alleges as follows:

### I.      JURISDICTION AND VENUE

1.      Jurisdiction over Plaintiff's federal claims is conferred upon this Court pursuant to 28 U.S.C. § 1331, as the claims are brought pursuant to 42 U.S.C. § 1983, in addition to the Colorado Constitution.

2.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Jurisdiction supporting Plaintiff's claims for attorney fees and costs is conferred by 42 U.S.C. § 1988 and C.R.S. § 13-21-131.

3.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this Complaint.

4.      All available administrative remedies have been exhausted to the extent required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) and C.R.S. 13-17.5-102.3. There are no other administrative exhaustion requirements that would pose as a bar to the claims asserted herein.

## II.      PARTIES

5.      At all times relevant to this Complaint, Plaintiff Kevin Ryder was a citizen of the United States of America and resident of the State of Colorado.

6.      At all times relevant to this Complaint, Defendant Clifford Rezak was a citizen of the United States and resident of the State of Colorado and was acting under color of state law in her capacity as an employee of the Colorado Department of Corrections.

7.      At all times relevant to this Complaint, Defendant Stacy Elizardo was a citizen of the United States and resident of the State of Colorado and was acting under color of state law in her capacity as an Internal Classification Committee Chairman and an employee of the Colorado Department of Corrections.

8.      At all times relevant to this Complaint, Defendant Christopher Butala was a citizen of the United States and resident of the State of Colorado and was acting under color of state law in his capacity as a Central Classification Committee Member and an employee of the Colorado Department of Corrections.

9.      Defendant Correctional Health Partners, LLC ("CHP") is a Colorado Corporation with its principal street address at 1720 S Bellaire St Ste 700, Denver, CO, 80222. At all times relevant to this complaint, Defendant CHP acted as utilization management for the Colorado Department of Corrections, including Arrowhead Correctional Center, and made medical decisions for inmates at these facilities as to whether they are allowed access to certain medical

2

procedures.  Defendant CHP is a proper entity to be sued under 42 U.S.C. § 1983 and C.R.S. 13-21-131 for its own deliberately indifferent policies, practices, habits, customs, procedures, training and supervision of staff with respect to the gatekeeping function of allowing medical care and treatment for inmates with chronic and acute care needs.

### III.    FACTUAL ALLEGATIONS

10.    Kevin Ryder is a 59-year-old man who was incarcerated at Colorado Department of Corrections facilities from August 2023 through July 31, 2024.

11.    Prior to his incarceration, Mr. Ryder was in good health, with no significant medical issues.

12.    Mr. Ryder received an initial custody designation of "minimum" and was assigned to Delta Correctional Facility.

13.    On or around March 19, 2024, while still incarcerated at Delta Correctional Facility, Mr. Ryder was walking on gravel when his knee suddenly buckled. He immediately experienced severe pain and was unable to walk properly.

14.    Mr. Ryder sought medical attention from nurses and was told to ice and rest his knee and given Advil.

15.    However, his symptoms did not improve and he remained in extreme pain with difficulty walking.

16.    Around this same time Mr. Ryder hurt his elbow while working in the kitchens.

17.    After putting in requests for medical care, he was finally seen on April 26, 2024, by Kelli S. Deeter.

18.    During this visit Dr. Deeter specifically noted that Mr. Ryder had felt a "rubber band tear" in the outside of his elbow, had 5-9/10 pain, and had weakness in the elbow.

3

19.    Dr. Deeter also noted that Mr. Ryder has instability in his knee with 4-9/10 in pain, and had no improvement despite taking advil and icing the injury. Dr. Deeter's also noted that the pain was so bad that it was keeping Mr. Ryder awake at night.

20.    Dr. Deeter diagnosed him with Chronic instability of knee, and lateral epicondylitis of the elbow, and ordered X-rays for both injuries.  It was also noted in the medical notes that the differential diagnosis of his injury was: prepatellar laceration, meniscal tear, ACL/MCL/LCL rupture, and arthritis.

21.    He was provided a sling and knee sleeve, but no other treatment.

22.    Mr. Ryder received X-rays on April 29, 2024, which indicated a prepatellar laceration of the knee. These results were signed by Dr. Anthony Bullard.

23.    After reviewing these results, Dr. Deeter ordered an MRI of both the knee and the elbow.

24.    Despite this clear medical directive, no MRI was ever scheduled or performed while Mr. Ryder remained in DOC custody.

25.    Mr. Ryder continued to follow up regarding scheduling an MRI.

26.    On May 10, 2024, Mr. Ryder was re-classed to a higher level of custody, "minimum-restrictive"—and DOC records allegedly state that the transfer was done for "medical needs."

27.    As a result of this reclassification, Mr. Ryder was moved from Delta Correctional, which is a Level 1 facility, to Arrowhead Correctional Center, a Level II facility.

28.    This reclassification was initialed by Clifford Rezak, Mr. Ryder's case manager, and signed off on by Internal Classification Committee Chairman Stacy Elizardo and Central Classification Committee Member Christopher Butala.

4

29.    However, Mr. Ryder still did not receive an MRI or any other medical treatment at Arrowhead.

30.    Mr. Ryder's condition continued to worsen without treatment, become more unstable. In late May or early June of 2024, Mr. Ryder's knee gave out while he was walking, causing the pain to significantly worsen. After that time, he had difficulty with any weightbearing or walking and required crutches.

31.    On June 10, 2024, Mr. Ryder presented to the Health Services clinic at Arrowhead Correctional Center, again seeking treatment for his knee. He explained that he was still experiencing 9/10 pain and 5/10 weightbearing on his knee. During this visit he was notified that the MRI and of his knee and elbow had been denied by the third-party administrator Correctional Health Partners ("CHP").

32.    On June 25, 2024, he saw Dr. Matthew Kovach, and again described the pain and difficulty walking that he was experiencing. Dr. Kovach issued him crutches, and ordered him to have ice twice a day. He also told him to purchase acetaminophen from the canteen. During this same appointment, Mr. Ryder also raised concerns about his elbow injury, which continued to be painful and had been reaggravated when he slipped while using crutches.

33.    In the notes from this appointment, Dr. Kovach noted that Mr. Ryder had lateral epicondylitis of the elbow, and internal derangement of the left knee with partial MCL tear.

34.    Dr. Kovach advised Mr. Ryder of home exercises he could try and scheduled another X-ray for July of 2024.

35.    On July 1, 2024, Mr. Ryder received an x-ray which reported mild degenerative changes of his knee.

36.    Although X-rays can rule out fractures or bone injuries, an MRI is the appropriate

5

diagnostic tool to visual injuries to soft tissue, including ligaments.

37.    From March 20, 2024, through his transfer to a halfway house on July 31, 2024—a period of over four months—Mr. Ryder was left to suffer with a severely damaged knee that left him unable to walk normally.

38.    Throughout this period, Mr. Ryder continued to write kites and formal grievances—approximately 10 in total—requesting medical attention. On several occasions he was falsely told that appointments were being scheduled, but these appointments never materialized.

39.    Further, during this period Mr. Ryder's CPAP machine broke, and was not replaced, leaving him without treatment for his sleep apnea and putting him at severe health risk.

40.    On July 31, 2024, Mr. Ryder was transferred to a halfway house in Colorado Springs. Once there, he was able to obtain a Medicaid card and seek proper medical treatment through UCHealth.

41.    On August 21, 2024, Mr. Ryder was finally able to get an MRI of his knee.  The MRI revealed a complex medial meniscus tear, tearing in the distal quadriceps tendon, grade 2 fissuring the patella, and damage to his cartilage.

42.    On October 30, 2024, Mr. Ryder's medical provider recommended that he undergo a total knee replacement surgery.

43.    Mr. Ryder underwent a total left knee replacement surgery on June 9, 2025.

44.    MRI imaging also confirmed the torn tendon that DOC medical staff had identified but failed to treat. Mr. Ryder is currently undergoing physical therapy for his elbow injury.

45.    Due to limping on his left knee for approximately seven months, Mr. Ryder has now developed severe hip pain, creating a cascade of musculoskeletal problems that could have been prevented with timely treatment.

6

46.     Mr. Ryder continues to receive ongoing medical care through UCHealth and is currently in physical therapy for both his elbow and knee.

47.     As a result in the delay of his care, Mr. Ryder experienced significant pain and suffering.

## IV.     STATEMENT OF CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourteenth Amendment - Deliberate Indifference to Medical Needs**
**(Against Correctional Health Partners)**

48.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

49.     At all times relevant to the subject matter of this Complaint, Defendants were acting under color of state law.

50.     At all times relevant to the subject matter of this Complaint, Plaintiff had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to be free from deliberate indifference to his medical needs.

51.     Any reasonable correctional employee knew or should have known of this clearly established right.

52.     Refusing an MRI to an individual with a known knee injury and elbow injury constitutes deliberate indifference to medical needs.

53.     Correctional Health Partners was aware of Mr. Ryder's knee and elbow injuries, and the significant pain that he was suffering, but chose to deny him an MRI.

54.     Defendants' deliberate indifference was the direct and proximate cause of excruciating pain to Plaintiff.

7

55.    As a result of Defendants' conduct, Plaintiff suffered physical and mental injury including pain and suffering, humiliation, emotional distress, and other injuries, damages, and losses.

56.    Defendants' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiff's federally protected rights, which entitles Plaintiff to punitive damages.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourteenth Amendment – Denial of Due Process**
**(Against Individual Defendants)**

57.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

58.    At all times relevant to the subject matter of this Complaint, Defendants were acting under color of state law.

59.    At the time when Plaintiff was reclassified and transferred to a different facility, he had a clearly established right to due process under the Colorado Constitution.

60.    Any reasonable Deputy knew or should have known of this clearly established right, and that intentionally reclassifying Mr. Ryder to a higher level of custody without adequate process, and in retaliation for his medical complaints, violated that right.

61.    Defendants' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiff's constitutionally protected rights.

**V.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant, and grant:

(a)    Appropriate declaratory and other injunctive and/or equitable relief;

(b)    Compensatory and consequential damages, including damages for physical injury,

emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on

all claims allowed by law in an amount to be determined at trial;

(c)    All economic losses on all claims allowed by law;

(d)    Punitive damages on all claims allowed by law and in an amount to be determined

at trial;

(e)    Attorney's fees and the costs associated with this action, as well as expert witness

fees, on all claims allowed by law;

(f)    Pre- and post-judgment interest at the lawful rate to the maximum extent allowed

by law; and

(g)    Any further relief that this court deems just and proper, and any other relief as

allowed by law.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated March 19, 2026.

TYRONE GLOVER LAW

s/ *Genevieve Mesch*
s/ *Tyrone Glover*
Genevieve Mesch, #59868
Tyrone Glover #41529
3401 Quebec Street, Suite 9000
Denver, CO 80207
tyrone@tyroneglover.com
genevieve@tyroneglover.com
Phone: 303-577-1655

*Attorneys for Plaintiff.*

9